☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.24-849M(NJ) |
| A black Samsung smartphone IMEI 357532329624267, | ) |
| securely stored at the FBI Milwaukee Field Office 3600 S. | ) |
| Lake Drive, St. Francis, WI, hereinafter the Target Phone | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 5/1/2024 *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Nancy Joseph_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 4/17/2024 @ 2:55p.m. _____

_____
*Judge's signature*

City and state:    Milwaukee, Wisconsn _____

Magistrate Judge Nancy Joseph
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

**Premises to Be Searched**

The below-described **Target Phone**, which is securely stored at the FBI Milwaukee Field

Office, 3600 S. Lake Drive, St. Francis, Wisconsin, to wit:

- A black Samsung smartphone IMEI 357532329624267

## <u>ATTACHMENT B</u>

### Evidence to Be Seized

All records on the **Target Phone** described in Attachment A that relate to violations of Title 18, United States Code, Sections 1591(a)(1) and (b)(2) (sex trafficking of a child), in whatever form they may be found, including but not limited to:

a. Stored electronic communications, including email, instant messaging, text messaging, multimedia messaging, and communications in third party apps;

b. Contact lists and records of communications with those contacts, including call logs and written messages of any kind;

c. Images, videos, travel records, information related to the identity of victims, and any other content or records on the phone.

d. Photographs or videos;

e. Records evidencing travel and device location information, including GPS locations, map or navigation apps, phone tracking apps, and Internet Protocol addresses;

f. Web browsing and bookmark history; and

g. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, calendars, and saved usernames and passwords.

As used above, the terms "records" includes all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.

16

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>A black Samsung smartphone IMEI 357532329624267, securely stored at<br>the FBI Milwaukee Field Office 3600 S. Lake Drive, St. Francis,  WI,<br>hereinafter the Target Phone | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.24-849M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, USC, Section 1591(a)<br>(1) and (b)(2) | Sex trafficking of a minor |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_Kathrine L. Sadler_    Digitally signed by Kathrine L. Sadler
Date: 2024.04.16 16:04:39 -05'00'

*Applicant's signature*

Kathrine L. Sadler, FBI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 4/17/2024

*Judge's signature*

City and state:   Milwaukee, Wisconsin             Magistrate Judge  Nancy Joseph

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Kathrine L. Sadler, being first duly sworn, hereby depose and state as follows:

## I.      INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation, Milwaukee Field Office. I have held that position since 2019.

2.      I am currently assigned to the Federal Bureau of Investigation (FBI) Child Exploitation and Human Trafficking Task Force (CEHTTF). My duties as a Special Agent with the CEHTTF include human trafficking investigations involving minors and adults. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state, and federal law enforcement agencies.

3.      The facts contained in this affidavit are known to me through my personal knowledge, training, and experience, and through information provided to me by other law enforcement officers, who have provided information to me during the course of their official duties and whom I consider to be truthful and reliable. Some of the information was provided in response to administrative subpoenas and I believe that this information is also reliable.

4.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II.      PURPOSE OF THIS AFFIDAVIT

5.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device, namely a black Samsung phone, hereinafter called the "**Target Phone**" and described further in Attachment A, which is presently securely stored in the custody of the FBI Milwaukee Field Office

1

in its property room at 3600 S. Lake Drive, St. Francis, Wisconsin.

6.     The applied-for warrant would authorize the forensic examination of the **Target Phone** for the purpose of identifying electronically stored data particularly described in Attachment B.

7.     There is probable cause to believe that the **Target Phone** listed above has been used as an instrumentality of, and contains evidence of, violations of Title 18, United States Code, Sections 1591(a)(1) and (b)(2) (sex trafficking of a child).

**III.     PROBABLE CAUSE**

**A.     NCMEC Tip Regarding CV**

8.     On Wednesday, April 3, 2024 at 0253 hours, case agents received a cyber tip from the National Center for Missing and Exploited Children (NCMEC) labeled priority level 2 (possible risk to an individual in the near future or otherwise time-sensitive), regarding a missing 16 year old hereinafter referred to as Child Victim (CV). The tip, made by CV's father, Pedro S., reported that CV had been missing since March 27, 2024, and that he believed she was being trafficked for commercial sex.

9.     CV, who is originally from Minneapolis, MN, was court-ordered to residential treatment at Lad Lake's St. Rose Campus, located at 3801 N. 88th Street in Milwaukee, Wisconsin, as a part of a probation sentence in a juvenile criminal case.

10.     According to a Lad Lake Incident report dated March 27, 2024, CV had a phone call with her mother, Stephanie S., wherein CV informed her mother that she was having anxiety as a result of being placed at Lad Lake and wanted to run away. Lad Lake's staff were informed of the conversation. CV was offered the opportunity to take her medication early, but CV refused, stating it was only melatonin, so it didn't matter.

2

11.     Around 16:30 hours that day, CV asked if the doors to the facility were locked. CV was informed by the staff that while the doors were not locked, the staff had permission from her parents to place CV in a restraint, if necessary, to keep her safely in the building.

12.     At approximately 18:10 hours, the Lad Lake staff gathered the residents, including CV, in the gym area of the campus. CV, together with another resident, began to separate from the group. The staff attempted to engage in conversation with CV and the other resident to make CV feel supported, but CV and the other resident ignored the staff.

13.     At approximately 18:30 hours, CV and the other resident began to walk away from the staff, heading towards the gym doors. The staff followed the residents verbally encouraging them to remain on the campus grounds. CV and the other resident ran out of the building and towards the apartment buildings next to the campus and ignored staff when asked where they planned to go. A missing persons report was filed with Milwaukee Police Department (MPD) District 7 under case report number C2403270148.

14.     On Thursday March 28, 2024, the Department of Community Corrections and Rehabilitation in Hennepin County, Minnesota filed a probation violation report alleging that CV had failed to complete court-ordered residential treatment. On Friday March 29, 2024, an arrest warrant was issued for CV on the probation violation.

15.     On Saturday, March 30, 2024, CV's father reported to NCMEC that CV was missing and potentially being trafficked. The NCMEC tip identified an online commercial sex advertisement for CV that had been posted multiple times between April 1, 2024, and April 3, 2024 on a known commercial sex website called Megapersonals.com. The ads included photos, some of which depicted CV's face. The ads read, "Good evening fellas, are you ready to play come ane get a scoop of this icecream baby! Call me vanilla –incalls/outcalls NO black men." The ad

was listed for the Milwaukee, Wisconsin area with a phone number ending in -4921.

**B.      Attempted Recovery of CV**

16.      On Wednesday, April 3, 2024, the same day the NCMEC tip was received, undercover officers sent text messages to the phone number in the ads for CV, however none of the undercover officers received a reply.

17.      Case agents reached out to the legal team for Megapersonals.com and requested information related to the ads depicting CV. Administrative subpoenas were also issued requesting subscriber information and IP logs for various accounts believed to be used by CV, including two Snapchat usernames that included parts of CV's first and last names, as well as Cash App usernames and Facebook user IDs for her.

18.      On Thursday, April 4, 2024, case agents received results from the Snapchat administrative subpoena accounts. One of CV's Snapchat accounts was associated with a phone number ending in -9567. An open-source check for that phone number yielded summaries of law enforcement reports concerning CV. One of the report summaries, from January 29, 2023, concerned a call-in by a woman named Adaline Carson. reported that she suspected that her friend, CV, could be a victim of sex trafficking in Minneapolis, Minnesota. In the report, Carson explained that CV was 15 years old and from Minneapolis. Carson said that CV had posted a video online with text that stated she was at a hotel in Minneapolis alone and that people could "slide through." Carson was concerned because she knew CV to have been a victim of sex trafficking previously, and she could hear men's voices in the background of the posted video.

19.      That day (April 4), case agents began to canvas the Milwaukee area looking for CV. Posters of CV were distributed to hotels and motels known by law enforcement to be used for prostitution. Case agents showed the missing poster to a guest staying at Motel 6 located at 1201

W. College Avenue in Oak Creek, Wisconsin. The guest recognized the photo and believed she had seen CV at the Kwik Trip located at 6300 S. 27th Street in Oak Creek, Wisconsin on Tuesday April 2, 2024, in the early afternoon.

20.     There was also evidence that CV may have visited the Motel 6 located at 1201 W. College Avenue in Oak Creek, Wisconsin. The motel manager there told investigators that one of their newer staff members had turned down a minor from renting a room on Tuesday, April 2, 2024. The employee was not present to verify the photo of CV. Case agents requested surveillance footage for Tuesday April 2, 2024, however it has not yet been received.

21.     On Friday, April 5, 2024, case agents identified additional ads posted for CV on Megapersonals.com. An ad for CV was posted on April 4, 2024 at 22:08 hours for the Appleton, Wisconsin area and read, "Good evening fellas, are you ready to play come and get a scoop of this icecream baby! I promise youll be begging for more! Serious inquiries ONLY! You can call me Vanilla bsby OUTCALLS NO black men." The ad included some of the same photos from the first ad as well as additional photos, some of which depicted CV's face. The ad listed the same phone number ending in -4921.

22.     An additional ad was posted for CV on April 5, 2024, at 03:27 hours. The description and phone number for the ad were the same for the one posted for Appleton, Wisconsin, however this ad was posted for the Madison, Wisconsin area.

23.     At 6:27 hours, another ad was posted for CV. This ad included the same description and phone number but was posted for the Eau Claire, Wisconsin area.

24.     At 11:25 hours, another ad for CV was posted with the same description, again for the Eau Claire, Wisconsin area. This ad provided a slightly different phone number, wherein the last four digits had been changed from -4921 to -4291.

25.     On Friday April 5, 2024, the Wisconsin Department of Justice to the Wisconsin Crime Alert Network sent out a missing endangered person alert for CV.

26.     That same day, case agents received a list of reports from Hennepin County Sheriff's Office concerning CV's past runaway incidents in 2023 and 2024 involving the Minneapolis Police Department and Hennepin County Sheriff's Office. Some of the summaries of the incidents were suggestive of possible sex trafficking. For example, one of these reports, dated September 23, 2023, documented CV's recovery from a train station in Minnesota. CV was found exiting an elevator in the company of an adult male, and she had drugs on her. The adult male had to be physically restrained in order to effectuate CV's recovery. The report summary noted that the male was arrested for soliciting a minor (CV) to engage in sexual conduct, however it appears no charges were ultimately filed. Additional summary reports included recoveries of CV on February 2, 2024, April 10, 2023, and February 5, 2023. All of these incidents involved adult males. At the time of the February 2024 recovery, CV was found passed out in the back seat of a car.

27.     On Friday April 5, 2024, case agents spoke to CV's mother, Stephanie S., who stated she had talked to CV on the phone and that CV was using the phone number ending in -4291. Stephanie stated CV had sent her a photo of her newly manicured nails but did not tell her where she was at. Stephanie stated CV usually travels by bus and will hang out by hotels and gas stations in order to befriend older males. Stephanie stated that the Minneapolis Police Department has recovered CV from the home of a forty-year-old male, "Cat," about four times in the past. Stephanie stated CV has been in contact with males who have ties to gangs in Illinois as well.

6

### C. Recovery of CV and the Target Phone

28. On Friday, April 5, 2024, at approximately 14:50 hours undercover (UC) agents in the Eau Claire area started texting the updated phone number and received a response from the phone number ending in -4291. A UC asked if CV was in the Eau Claire area and for her availability. The text message back from the number ending in -4291 stated she was and was available any time.

29. At approximately 14:56 hours, CV asked to receive $1 via Cash App to prove that the UC was not law enforcement. When the UC replied that he did not have Cash App, CV texted asking for a picture of the UC's penis with two fingers. CV and the UC texted back and forth regarding the picture, the UC ultimately offered to set up Cash App instead of sending the photo.

30. At approximately 18:32 hours, CV provided a Cashtag (or Cash App username) of "$lililuvbugg 21" and "$Lililuvbugg21." The UC asked whether the Cash App was for payment or to prove the UC was not law enforcement. CV responded, "[T]o show u not police."

31. The UC, using an undercover Cash App account, sent $1 via Cash App to CV. At approximately 19:20 hours, CV asked, "U wanna come to the hotel I can't really drive." The UC and CV discussed a time, and the UC asked which hotel and the cost. At approximately 19:48 hours, CV texted "200 roses," which the case agents knew in their training and experience to mean $200.

32. At approximately 19:54 hours, CV provided the UC with the hotel name, GrandStay Residential Suites Hotel in Eau Claire. GrandStay Residential Suites Hotel is located at 5310 Prill Road, Eau Claire, Wisconsin. The UC and CV continued to text back and forth, discussing when to meet.

33.	At approximately 8:56 hours, CV texted, "Okay I'm Trina let my phone get to a good percentage but if you get here and I don't reply go to room 201 the second floor all the way at the end and just knock once."

34.	At approximately 21:24 hours, CV texted, "U have a condom[?]" The UC replied that he did. The last text exchange between the UC and CV was the UC texting, "Just parked, I will walk over to the side door," and CV responding, "Okay coming." Law enforcement officers, in plain clothes, were in a room adjacent to room 201. The officers saw CV exit the room and followed CV as CV was walking down the stairs just outside the room. UC was waiting for CV outside the locked exterior side door, located on the east end of the hotel. CV opened the door, greeted the UC, and led him to the stairs. The UC and the plain clothes officers notified CV that they were law enforcement and handcuffed CV due to the outstanding warrant for her arrest. CV was detained at approximately 21:45 hours.

35.	While waiting for a marked Eau Claire police squad to transport CV, CV was asked by one of the officers if there was anyone else in room 201. This question was asked several times, and each time CV answered "no" after a delay. Officers told CV they needed to know because they had to make entry into the room to retrieve her belongings. CV then stated there was another female in the room. CV told the officers that she met this female in Milwaukee and that the female didn't know that CV was a minor. CV declined to give further information on how and when CV met the female. She also asked the officers not to tell the female her age.

36.	Eau Claire Police Officer Perkins transported CV to Mayo Clinic Eau Claire for medical clearance at approximately 22:15 hours, then to the Northwest Regional Juvenile Detention Center. Agents retained CV's only phone, the **Target Phone**, which was found on her person, as evidence and turned over CV's property to Officer Perkins.

37.     Based on CV's statements, law enforcement believed someone else was present in the room. Law enforcement obtained a key for room 201 from the hotel but found the door to be slightly ajar. Agents located a female in the room and identified her by her Wisconsin driver's license as Ebony A. Jordan.

38.     Jordan requested that the agents leave the room while she smoked a cigarette outside the hotel. The agents left room 201 and accompanied Jordan outside.

39.     While outside, the agents interviewed Jordan, who expressed surprise when the agents told her that CV was a minor. Jordan stated she did not remember where or when she met CV, only stating that they had known one another longer than just that day (April 5, 2024). Jordan also stated that she resides in Cornell, Wisconsin.

40.     Jordan provided verbal consent to retrieve CV's belongings from inside room 201. Jordan identified a brown backpack as belonging to CV and gave the agents a winter coat for CV.

41.     Jordan has a criminal history that includes convictions for prostitution from St. Petersburg, Florida in 2023, assault and battery from Lawton, Oklahoma in 2020; assault – 5th degree – fear of bodily harm or death from Mankato, Minnesota in 2016; disorderly conduct from Omaha, Nebraska in 2012; prostitution from Carpentersville, Illinois in 2011; and disorderly conduct from Milwaukee, Wisconsin in 2010.

42.     Case agents identified several online prostitution ads containing photos of Jordan that were posted between April 4, 2024 and April 5, 2024 for the cities of Appleton, Madison, and Eau Claire, the same cities where CV's ads were posted. Part of Jordan's ad description read, "Ask about 2 girl specials!" Previous online ads for Jordan from March 2024 did not include this language.

9

### D. Follow-Up Interview of CV's Mother

26.     On Saturday April 6, 2024, case agents spoke with CV's mother to notify her that CV had been recovered. CV's mother provided additional information regarding CV's past. CV's mother stated when CV was 13 or 14 years old CV started having mental health problems and became suicidal. As a result, CV was hospitalized.

27.     Due to the COVID-19 pandemic, CV could not hang out with her friends and started hanging out with people from the hospital programs. CV's mother stated CV met an older female who influenced her to run away, do drugs (including fentanyl), and get involved in commercial sex work. (It should be noted that in the NCMEC tip, CV was described as having been physically and sexually abused by unknown individuals.)

### E. Interview of CV

27.     On April 8, 2024, FBI Special Agent Sadler and DCI Special Agent Jason Christenson interviewed CV at the Northwest Regional Juvenile Detention Center located at 721 Oxford Avenue in Eau Claire, Wisconsin. CV did not want to speak to the agents about her where she had been after leaving Lad Lake until she was recovered at the GrandStay Residential Suites Hotel – Eau Claire. CV admitted to using drugs but did not say what kind.

28.     When asked about the ads, CV's body language shifted. CV looked away and stated she only posted ads as a last resort. CV mentioned that she would rather just walk, meaning solicit commercial sex customers by walking a street track, instead of posting ads online.

29.     CV did not want to talk to the agents about Jordan, whose room she was staying in in Eau Claire, or provide any details as to how she was able to travel from Milwaukee to Eau Claire. She stated only that she had left the Milwaukee area on Friday, April 5, 2024 by car.

30.     Case agents obtained a copy of the receipt for the hotel room showing that Ebony Jordan had rented the hotel room in which CV was recovered from April 5, 2024 to April 6, 2024. Jordan gave the hotel a phone number for herself ending in -7005.

31.     When agents told CV her phone (the **Target Phone**) was being kept as evidence, CV became distraught and stated she would not give agents the passcode.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

32.     On April 8, 2024, Special Agent Sadler obtained the **Target Phone** from the FBI Satellite Office in Eau Claire, Wisconsin.  The **Target Phone** was subsequently secured at the FBI Milwaukee Field Office, located at 3600 S. Lake Dr, St. Francis, Wisconsin, where it is presently stored.

33.     There is probable cause to believe that the **Target Phone** is connected to the phone number ending in -4291, as this is the number CV had used to speak to her mother, that number appeared in commercial sex advertisements for CV, that number was used by someone at least purporting to be CV in the text conversation with the UC, and CV had only one phone on her at the time of her arrest. CV's apprehensiveness about law enforcement seeking to examine the device also suggests it will contain evidence of the topics she declined to speak with law enforcement about, including where she was, who she was with, and what she was doing after leaving Lad Lake.

34.     Based on the information described above, there is also probable cause that CV is a victim of child sex trafficking. CV's departure from Lad Lake and travel throughout the State of Wisconsin (when she did not have a means of transportation), the commercial sex advertisements found for CV and Jordan in the same cities, and the fact that Jordan rented the hotel room where CV was performing commercial sex acts in Eau Claire establish probable cause that Jordan was transporting, harboring, and potentially advertising CV for commercial sex, having had a

11

reasonable opportunity to observe CV. Additionally, there is probable cause to believe that other unknown individuals may be complicit in the crime of sex trafficking of a child—for instance, anyone who patronized CV in response to the commercial sex advertisements posted for her.

35. Furthermore, there is probable cause to believe that the **Target Phone** will contain evidence of the crime of sex trafficking of a child. I know that when an individual uses or is instructed to use an electronic device to further a sex trafficking operation, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime, including data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

36. Many traffickers communicate with victims using digital devices and the Internet. These communications may contain evidence, including of victim's names/nicknames, location information, or descriptions of criminal acts. Traffickers also often post online commercial sex advertisements for their victims and use cellular phones to communicate with prospective clients via text message. Online commercial sex advertisements, like the ones posted for CV here, often contain photographs of the victim, and those photographs are typically taken using a cellular phone. These photographs can then be uploaded directly to the Internet or transferred to another electronic medium.

37. Victims typically use cellular phones to communicate with their traffickers via phone call, text message, or the use of social media and other communication applications. During these conversations, traffickers often convey instructions, such as when and where to work, how

much to charge for particular services, where to meet a commercial sex date or the trafficker. Victims may also be transported by their traffickers to prostitution tracks or outcall prostitution dates, as described in CV's ads here, and they or their traffickers often use digital devices to navigate to those locations. Victims may also communicate directly with clients using their cellular phones.

38. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

39. I also know that electronic storage device files or remnants of such files can be recovered months or even years after they have been deleted. When a person deletes a file on an electronic storage device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data. Deleted files, or remnants of deleted files, may reside in free space or slack space, that is, in space on the storage medium that is not currently being used by an active file for long periods of time before they are overwritten. In addition, if the electronic storage device uses an operating system (as most "smart phones" like the **Target Phone** do), the device may also contain a record of deleted data in a swap or recovery file.

40. The **Target Phone** is currently in storage at the FBI Milwaukee Field Office. In my training and experience, I know that the **Target Phone** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Target Phone** first came into the possession of the FBI Milwaukee Field Office on April 9, 2024.

41.     Consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying the **Target Phone** and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection to determine whether it is evidence described by the warrant.

42.     Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.     CONCLUSION

43.     Based on the foregoing, there is probable cause for the Court to issue the requested search warrant.

## <u>ATTACHMENT A</u>

### Premises to Be Searched

The below-described **Target Phone**, which is securely stored at the FBI Milwaukee Field

Office, 3600 S. Lake Drive, St. Francis, Wisconsin, to wit:

- A black Samsung smartphone IMEI 357532329624267

15

**ATTACHMENT B**

**Evidence to Be Seized**

All records on the **Target Phone** described in Attachment A that relate to violations of Title 18, United States Code, Sections 1591(a)(1) and (b)(2) (sex trafficking of a child), in whatever form they may be found, including but not limited to:

a. Stored electronic communications, including email, instant messaging, text messaging, multimedia messaging, and communications in third party apps;

b. Contact lists and records of communications with those contacts, including call logs and written messages of any kind;

c. Images, videos, travel records, information related to the identity of victims, and any other content or records on the phone.

d. Photographs or videos;

e. Records evidencing travel and device location information, including GPS locations, map or navigation apps, phone tracking apps, and Internet Protocol addresses;

f. Web browsing and bookmark history; and

g. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, calendars, and saved usernames and passwords.

As used above, the terms "records" includes all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.